BRYAN GILMORE *vs.* MITTINEAGUE PAPER COMPANY.

Hampden.    September 29, 1897. — November 23, 1897.

Present: ALLEN, HOLMES, KNOWLTON, MORTON, & BARKER, JJ.

*Personal Injuries — Master and Servant — Negligence — Evidence.*

At the trial of an action for personal injuries occasioned to the plaintiff while in the defendant's employ by the starting of the power by which a machine was run, while the plaintiff, who was familiar with the machine, was inside of it making an examination after a fire had been discovered in it, the evidence showed that a woman who was running the machine when the fire broke out gave the alarm by running part way to the superintendent's desk, which was in the room, without first shifting the belt from a tight pulley to a loose pulley on the overhead shaft; that she often shifted the belt in running the machine, and was perfectly competent to do so; and that the superintendent shut off the power from the room, and then started it again without knowing the plaintiff's position. *Held,* that there was no evidence that the defendant was negligent in employing an incompetent servant.

In an action for personal injuries occasioned to the plaintiff while in the defendant's employ by the starting of the power by which a machine was run, while the plaintiff was examining it after a fire had been discovered in it, a question to a witness, who was running the machine at the time of the fire, whether she had ever been instructed concerning the running of it, is rightly excluded, if there is nothing to show that she needed any instructions for the proper performance of her regular duties.

An employer is not called upon to instruct his ordinary employees in regard to their conduct in so unexpected an emergency as the discovery of a fire.

The admissions of the general manager and treasurer of a corporation, not made in the performance of his duty as such officer, are incompetent in an action against the corporation for personal injuries received by an employee.

In an action for personal injuries occasioned to the plaintiff while in the defendant's employ by the starting of the power by which a machine was run, while the plaintiff was examining it after a fire had been discovered in it, an offer to show that turning on or shutting off the power was an act of superintendence under the employers' liability act, St. 1887, c. 270, is rightly excluded, it appear-

ing that, at the time of the accident, the witness called to prove it had worked in the room only one day, and did not know the defendant's custom and method of business in this particular.

TORT, for personal injuries occasioned to the plaintiff, while in the defendant's employ. The declaration contained three counts; the first at common law, for negligent failure to furnish the plaintiff with safe instrumentalities for the proper prosecution of his work, and with competent fellow servants; and the second and third counts, under the employers' liability act, St. 1887, c. 270, alleging a defect in the defendant's ways, works, or machinery, and negligence of a person intrusted with and exercising superintendence in the defendant's service, whose sole or principal duty was that of superintendence.

Trial in the Superior Court, before *Dewey,* J., who allowed a bill of exceptions, in substance as follows.

The plaintiff had been employed by the defendant about sixteen months prior to the accident, which happened on October 12, 1895. From February, 1895, until the day of the accident, he had been engaged in running a threshing machine, which is a machine to dust rags in the process of paper making. This machine consisted of a wooden box about ten feet long, five feet wide, and seven or eight feet high, with a screen in the top, and a fan above that to carry off the dust. A cylinder about eight feet long and twenty-four inches in diameter revolved lengthwise in the machine; and upon the cylinder were two long rows of iron spikes from six to eight inches in length, used for catching and whirling rags. There was a horizontal opening about twenty-five inches wide, extending the whole length of the machine, covered by a sliding door. At the right end of the machine were two large iron pulleys about thirty-six inches in diameter, one loose and one tight, connected with the axle of the cylinder. Directly overhead were corresponding pulleys of like diameter upon the main shaft, connected by belt and shipper. At the left end of the machine was the wheel in the floor which started the entire power in the room. On the day in question, the plaintiff was sent to work in another part of the defendant's mill, called the stock house, and in his absence one Fannie Duval, a regular hand in that room, was running the machine, as she often did when directed to do so. During the forenoon,

fire was discovered in the machine; and Duval gave the alarm by running part way to the desk of the superintendent, which was in the room. Thayer, the superintendent, at once shut off the speed from the room, and turned on the steam to smother the fire, and then sent a girl to call the men, including the plaintiff, who were working in the stock house. When they came, a hand hose was procured and run into the machine, and the fire extinguished. Thayer then directed the plaintiff to see if there was any fire in the screen in the upper part of the machine. The plaintiff testified that Thayer told him to " go right into the thresher, pull down the screen and examine it, and see if there was any fire, and clean it out." Several of the plaintiff's witnesses testified that he was directed to go into the machine. Thayer testified that the plaintiff could have examined the screen " while standing on his feet, without any necessity of getting into the machine." The plaintiff went into the machine, and while there Thayer started the speed in order to drive the fan which would take out of the room the steam and smoke, which had become uncomfortably dense; and the cylinder in the machine started, and the plaintiff received the injuries complained of. Thayer testified that he told Duval, when she gave the alarm of fire, to shift the belt from the tight pulley to the loose pulley; and that he had no knowledge or idea that the plaintiff had gone into the machine when he started the speed after the fire. There was uncontradicted evidence that Duval frequently shifted the belt when running the machine, and was competent to do so. Thayer also testified that, if the speed was shut down, it would not be possible for a woman to shift the belt from the tight pulley to the loose pulley.

Duval was asked the following questions: " Whether or not Mr. Thayer ever instructed you concerning the running of the duster, or what to do in case of fire? Did you receive instructions from any one in the mill as to what action should be taken by you in case of fire in that duster?" These questions were objected to and excluded; and the plaintiff excepted.

Horace A. Moses, called as a witness by the plaintiff, testified that he was the treasurer and manager of the defendant corporation; and that he had entire charge of the mill, and gave orders to the superintendents of the different departments of

the mill. He was then asked the following question : " As a matter of fact, did you delegate to Mr. Thayer the power of hiring and discharging the men in that room, and instructing them ? " This question was objected to, and excluded ; and the plaintiff excepted.

The following questions were also asked Duval: "Whether or not Mr. Moses, the treasurer of the mill, ever told Mr. Thayer in your presence that it was n't a woman's work to run the thresher? Whether or not Mr. Moses said to Mr. Thayer, in your hearing, that it was n't a woman's work to run the duster, and that a man should be there?" Upon objection by the defendant, these questions were excluded; and the plaintiff excepted.

Thayer, who was a witness for the defendant, was asked : " I want to ask you if you had a conversation with Mr. Moses, in the presence of Fannie Duval, in which Mr. Moses said it was n't a woman's work to run the thresher? " This question, upon objection, was also excluded; and the plaintiff excepted.

John Farrell, called as a witness by the plaintiff, testified : " At the time of the accident I was employed in the rag room of the defendant, and was one of the men in the stock house ; had been working for the defendant from the day before; one of the girls holloed ' Fire ! ' and we all ran into the rag room ; I don't know whether the speed was running, and did n't notice whether it was shut down. When I came into the rag room, Mr. Thayer was standing towards the end of the thresher, where the wheel is. I noticed a few sparks of fire in the duster; stood there a while ; I helped pull out the burning dust from under the thresher ; I heard Mr. Thayer tell the plaintiff to go in the duster, and look overhead, and see if there was any fire. The plaintiff went in the duster, and the next thing I saw he was about ten feet away from the duster, on the floor. I saw Mr. Thayer start the speed; I don't know who shut it down. I saw Mr. Thayer start the speed while the plaintiff was in the duster." The plaintiff offered to show by this witness that starting the power or shutting it off was the sole act of the superintendent, and could not be performed by any one else in the room unless delegated by the superintendent; and that those acts were acts of superintendence, although in the nature

of manual labor.  This evidence was excluded, partly because the witness was not sufficiently informed as to the custom of the room, having worked there only one day ; and the plaintiff excepted.

The judge ruled that there was no evidence for the jury to consider under the first and second counts of the declaration, and submitted the case to them upon the third count only ; and the plaintiff excepted.

The jury returned a verdict for the defendant; and the plaintiff alleged exceptions.

*W. G. McKechnie & J. L. Doherty*, for the plaintiff.

*W. H. Brooks & W. Hamilton*, for the defendant.

KNOWLTON, J.  The first exception is to the ruling that there was no evidence for the jury under the first and second counts of the declaration.

1. It is very clear that there was no evidence under the second count, alleging the existence of a defect in the ways, works, or machinery of the defendant, and the exception to this part of the ruling has not been argued.

2. The only contention of the plaintiff in regard to the first count, which is at common law, is that the jury might have found the defendant to have been negligent in employing Fannie Duval, an incompetent servant.  But there was no evidence that she was incompetent.  Her only connection with the accident was through her failure to shift the belt from the tight pulley to the loose pulley, and so to stop the threshing machine, when she discovered the fire, and before the superintendent had time to stop it by shutting off the power from the room.  There is nothing to indicate that she did not thoroughly understand the management of the machine and was not perfectly competent to run it from time to time, as she was directed to do.  When she saw the fire she quickly gave the alarm, as any one would, running part way to the desk of the superintendent, which was in the room.  If her doing this without first stopping the machine, or if her failure to shift the belt and stop the machine afterwards, before the superintendent could shut off the power from the room, be deemed negligence, it was negligence of a fellow servant of the plaintiff, for which the defendant is not liable, and it has no tendency to show that she was an incompetent

servant. There was uncontradicted evidence that she often shifted the belt in running the machine, and was perfectly competent to do so; that she had not strength to shift the belt after the machine was stopped until the power was turned on, was immaterial. If the superintendent had noticed that the belt was on the tight pulley after the machine was stopped, he would not have turned on the power while the plaintiff was in the machine; and if the plaintiff had noticed it, he probably would not have entered the machine, at least without becoming certain that the power would not be turned on.

3. The evidence in regard to instructions to Fannie Duval was rightly excluded. There is nothing to show that she needed any instructions for the proper performance of her regular duties, and the defendant was not called upon to instruct its ordinary employees in regard to their conduct in so unexpected an emergency as the discovery of a fire.

The admissions of Moses, who was the general manager and treasurer of the defendant, not made in the performance of his duty as such treasurer, were incompetent. *Richstain* v. *Washington Mills Co.* 157 Mass. 538. *Wellington* v. *Boston & Maine Railroad,* 158 Mass. 185. *Toy* v. *United States Cartridge Co.* 159 Mass. 313.

The offer of Farrell's testimony, that turning on or shutting off the power was an act of superintendence, was rightly rejected. Apart from other reasons for the ruling, it is enough to justify it that the witness at the time of the accident had worked in the room only one day, and did not know the defendant's custom and method of business in this particular.

*Exceptions overruled.*