WOLFE KOPLAN *vs.* BOSTON GAS LIGHT COMPANY.

Suffolk.    March 15, 16, 1900. — October 18, 1900.

Present: HOLMES, C. J., KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Personal Injuries — Explosion of Gas in Subway — Evidence — Negligence — Law and Fact — Exceptions.*

In an action against a gas company for personal injuries caused by an explosion of gas which had accumulated in the chamber beneath the plank bridging over the surface of the street, under which a subway was being constructed, evidence of persons, most of whom were occupants of buildings near the place of the explosion into which extended pipes of various kinds with earth left more or less loosely around them, that they had noticed a strong smell of gas outside on the street and in some of the buildings on the morning of the explosion, and also similar smells, only not so strong, at different times before, the testimony of a few of the witnesses covering a period of about three months, is rightly admitted; as also is the testimony of a witness that a strong smell of gas which he noticed in the basement of his store on the morning of the accident was the same as the smell from a leak in his store which occurred several months before from gas furnished by the defendant.

A letter written by the chief engineer of the commission charged with constructing a subway, in which an explosion of gas occurred, to the chief engineer of a gas company having pipes in the excavation, showing that these two officials, who represented respectively the commission and the company, and were authorized to do all that they attempted to do in their dealings with each other in regard to the subway, were then considering the safety of the gas pipes where the work of constructing the subway was going on, although such work was not in the same section where the accident happened, is properly admitted, as bearing upon the defendant's conduct, in an action against the company for an injury caused by the explosion.

The engineer and treasurer of the corporation employed to construct a section of a subway in which an explosion of gas occurred is rightly permitted to testify, in an action against a gas company having pipes in the excavation, for injuries caused by the explosion, to conversations between himself and the chief engineer of the defendant, referring to the section in question, recommending the defendant to have an inspector on the line of the work, to be present at all times in case of an emergency, and thus to furnish an added element of safety, and informing him that other companies maintaining pipes and conduits on the line of the work were providing such inspectors.

Expert testimony, to the effect that the pipes in an excavation for a subway under a street on the surface of which electric cars passed were affected by electrolysis, although there was nothing in the appearance of the pipes which certainly showed it, is rightly admitted in an action for personal injuries caused by an explosion of gas in the excavation; and a refusal to rule that there was no evidence that the pipes had been affected by electrolysis is correct.

In a case, the trial of which occupied six weeks, the verdict will not be set aside

because of the admission of immaterial evidence having no relation to the issue, where it does not clearly appear from the bill of exceptions, and does not seem to this court probable, that the excepting party was injured by its admission.

At the trial of an action for personal injuries caused by an explosion of gas in an excavation for a subway, against a gas company having pipes therein, a clerk of the defendant was called in its behalf with its books of entries of leaks in its pipes reported to it, and he gave testimony tending to show that all such leaks in the vicinity of the explosion reported within three months before the explosion were promptly repaired. It appeared that he had made from the company's books a compilation showing all the leaks along the line of the subway reported within five months prior to the explosion. This compilation, which it was agreed might be treated as original evidence, was read to the jury against the defendant's objection, and the jury were permitted to consider the fact that the defendant had information of these leaks along the line of the subway, in connection with the question whether the defendant was negligent in failing to provide an adequate system for the protection of the public from the unusual danger of escaping gas incident to the uncovering and relocation of its pipes in the construction of the subway. *Held*, that these facts, in connection with the other evidence, were proper for the consideration of the jury.

Although the judge presiding at a trial in his discretion might properly have permitted certain questions to be asked, his refusal is not an error which will justify this court in setting aside the verdict, unless there is something to show that valuable testimony was thereby probably lost by the excepting party.

The admission of one defendant is not evidence against a plaintiff pursuing another defendant on independent grounds.

If a gas company having pipes in an excavation for a subway negligently suffers its gas to accumulate and remain in the chamber beneath the plank bridging over the surface of the street on which electric cars passed, it is liable for the natural and probable consequences of its negligence; and if the ignition of the gas by a natural cause, or by a person, ought to have been foreseen as a probability, the company is liable for injuries caused by an explosion of the gas, even if such person might also be chargeable with negligence.

It is a question of fact for the jury, in view of all the circumstances of the case, in an action against a gas company for injuries caused by an explosion of gas in an excavation for a subway, to determine whether reasonable care for the safety of the public required the defendant to provide an inspector for its pipes within the line of the subway work; and a request for a ruling that it was not its duty so to do is rightly refused.

In an action for personal injuries caused by an explosion of gas in an excavation for a subway, against a gas company having pipes therein, there being also pipes of other corporations there, a request for a ruling that in order to charge the defendant the jury must find that the gas which caused the explosion was its gas, is properly modified by a ruling that the defendant would be liable if such gas was in whole or in part its gas.

Where several defendants are sued jointly for independent acts of negligence, if the rulings are correct upon the issue between the plaintiff and one defendant, the latter has no ground of exception because a too favorable instruction given upon a different claim against another defendant is not also given in his favor.

TORT, brought originally against several corporations, for personal injuries caused by an explosion of gas at the corner of

Tremont and Boylston Streets in Boston, on March 4, 1897. At the trial in the Superior Court, before *Lilley,* J., the jury returned a verdict for the plaintiff as against the Boston Gas Light Company; and that defendant alleged exceptions, which appear in the opinion.

*R. M. Morse,* (*W. I. Badger* with him,) for the defendant.

*S. L. Whipple & W. R. Sears,* for the plaintiff.

KNOWLTON, J.   This action was brought to recover for a personal injury caused by the subway explosion of gas at the corner of Tremont and Boylston Streets in Boston, on March 4, 1897, at about half-past eleven o'clock in the forenoon.   The city of Boston and six business corporations — the Metropolitan Construction Company, the West End Street Railway Company, the Boston Gas Light Company, the Bay State Gas Company, the Edison Illuminating Company, and the Boston Electric Light Company — were joined as co-defendants in the original writ. Before the trial, the plaintiff discontinued against the city of Boston, the Boston Electric Light Company, and the Bay State Gas Company.   The trial proceeded against the Metropolitan Construction Company, the West End Street Railway Company, the Boston Gas Light Company, and the Edison Electric Illuminating Company.   When the plaintiff rested, the court instructed the jury that there was no evidence against the Edison Electric Illuminating Company, and a verdict in favor of that defendant was then entered.   The trial again proceeded, and the case was submitted to the jury as against the construction company, the street railway company, and the Boston Gas Light Company. Verdicts were rendered in favor of the first two of these defendants and against the Boston Gas Light Company.   The case is before us on exceptions taken by this defendant, most of which relate to the admission of evidence.

A considerable portion of the surface of the street at the intersection of Tremont and Boylston Streets was bridged over with heavy plank, supported by beams underneath.   Below this bridge there was a vacant space about thirty feet long from north to south, and fifteen feet wide from east to west.   Below that were the barrels of the subway, which at that time had been partially or entirely covered with earth.   The depth under the bridge varied from five feet or less to six or eight feet or

more.   There were interstices in the planking, and the gas that exploded was within this chamber.   Through the chamber ran from east to west a six inch pipe and an eight inch pipe of the Boston Gas Light Company, which necessarily were moved from their location in the construction of the subway.   From twenty to twenty-four feet in length of these were exposed at the time of the accident.   Within the excavation made in constructing the subway, but not within the lines of the completed subway and not moved from their location, were also a six inch pipe, a ten inch pipe, and a twenty-four inch pipe of the Boston Gas Light Company, and an eight inch pipe of the Brookline Gas Light Company.   There were sixteen Edison conduits within the area covered by the bridge, each pipe being about three inches in size.   The Boston Electric Light Company had also electric wires within the line of the original excavation, and there were also water pipes there, three of which had been relocated in the construction of the subway a considerable time before the accident.

That there was an explosion of gas which had accumulated in this chamber beneath the planking was undisputed, but beyond that the cause of the accident was obscure.   No one saw the conditions below the surface of the street immediately before the accident, and no one saw or knew the exact place or cause of the discharge of gas into the chamber, or of the ignition of the gas.   In pursuing the inquiry before the court, it became necessary to investigate a great number and variety of conditions, which altogether might furnish a foundation for a reasonable inference as to the culpability, if there was culpability, of any of the numerous parties who were charged with duties in regard to the safety of persons passing over this excavation.

The defendant excepted to the admission of testimony from numerous witnesses that they had noticed a smell of gas near the place of the accident at different times within three months previously.   These persons were nearly all occupants of the buildings on Tremont or Boylston Street just about the corner, so situated that there was reason to believe that the gas from this chamber might pass through the soil and by underground openings into these buildings.   Some of them testified to having noticed

this smell of gas outside on the corner.   Several of them testified to noticing a strong smell of gas in the basement or other portions of their premises on the morning of the explosion, and to having noticed similar smells at different times before, only not so strong.   The testimony of one or two of them covered a period a little longer than three months, but the attention of the judge was not directed to any different claim of the defendant on that account.   It was undisputed that notice of these smells was sent to the defendant on the morning of the explosion, before it occurred, and there was testimony that notice of similar smells at different times had previously been sent by some of these witnesses within three months before the explosion.   This evidence tended to show a defective condition of the gas pipes at the place of the accident, and it had some tendency to prove that this defective condition continued until finally it resulted in such a discharge of gas as to cause the accident.   The testimony of each witness is not to be considered alone, but in connection with all the other evidence. There was an excavation for the subway extending up and down Tremont Street near the cellar and basement walls of these buildings.   There were pipes of various kinds, with earth left more or less loosely around them, extending into these buildings, and there was testimony from numerous persons of a strong smell of gas in some of these buildings on the morning of the explosion, and of smells of gas before.   If testimony introduced afterward makes it improbable that the earlier observations of the witnesses were from the same cause as the discharge which caused the accident, that fact does not render the evidence incompetent.   The jury were instructed not to regard this evidence unless they were satisfied that the odors of gas to which the witnesses testified had their origin in the cavity where the explosion occurred.   We are of opinion that this class of testimony was rightly admitted.   *Lewis* v. *Boston Gas Light Co.* 165 Mass. 411.

The defendant also excepted to the admission of a letter written on July 11, 1896, by one Carson, chief engineer of the transit commission, which was the official board charged with the duty of constructing the subway, to Addicks, the chief engineer of this defendant.   The whole evidence tended to show

that Carson and Addicks respectively represented the official board and the Boston Gas Light Company, and were authorized to do all that they attempted to do in their dealings with each other in regard to the subway. The letter shows that they were then considering the safety of the gas pipes where the work of constructing the subway was going on. In it Carson said, " We shall be glad to give you or your men access to any part of the work for examination, and any suggestions you make in regard to the gas pipes will be carefully considered." Although the work which was then going on was not in the same section where the accident happened, Carson, as chief engineer, was in charge of the work of constructing the whole subway, Addicks, as chief engineer, was interested to have the gas pipes properly protected along the whole line of the subway, and the general subject to which the letter related pertained to the pipes along the whole line of the subway. The letter was properly received as bearing upon the defendant's conduct, to show what information it received, and what opportunities were given it in regard to inspection of the pipes and provision for the safety of all concerned. In the charge to the jury the use of the letter was strictly limited to this purpose.

The testimony of Walsh that the strong smell of gas which he noticed in the basement of his store on the morning of the accident was the same as the smell from a leak in his store which occurred several months before, from gas furnished by this defendant, was excepted to on the ground that the reference to the leak was incompetent. But this reference was simply for the purpose of identifying the gas by comparison, and for that purpose was unobjectionable.

Perrin, the engineer and treasurer of the construction company, was permitted to testify to conversations between himself and Addicks, the chief engineer of this defendant, referring to the section of the subway in which the explosion occurred, recommending the defendant company to have an inspector on the line of the work, to be present at all times in case of an emergency, and thus to furnish an added element of safety, and informing him that other companies maintaining pipes and conduits on the line of the work were providing such inspectors. The entire conversations were objected to, and not any partic-

ular parts of them. They were admitted for the purpose of showing that the attention of the defendant was directed to the peculiar and unusual dangers to which the pipes were necessarily to be exposed in the construction of the subway, and to the desirability of taking precautions against these dangers. The charge of liability against this defendant included two propositions, one that the gas which caused the explosion came from its pipes, and the other that it had failed to take proper measures to prevent such an escape of gas, or to discover it and protect the public from it if it should occur. As bearing upon this last proposition, information of the risk and a suggestion of precautions would tend to show negligence if such precautions were reasonably necessary. Whether they were reasonable or not was a question for the jury on all the evidence in the case. In this connection it should be remembered that Addicks, for the defendant, had strictly forbidden the Boston Transit Commission and the Metropolitan Construction Company to shut any gates or valves of any of its pipes in case of a leak or a broken main, or for any cause, and had threatened prosecution against any of their employees who should do it. Farrington, the defendant's superintendent of the street department, testified as follows: " It was the general understanding between myself and the officers of the [defendant] company that the gas company was under no further responsibility for its pipes within the lines of the subway; and during the entire construction of the subway, neither I personally, nor anybody employed in my department, was charged with the duty of inspecting the pipes, or their method of support, or looking after them in any manner within the lines of the subway." These conversations were competent for the purpose for which they were admitted.

We see no good ground of objection to the expert testimony of Bell and Farnum upon the subject of electrolysis. Their opinions to which they testified were in substance that the pipes were affected by electrolysis, although there was nothing in the appearance of them which certainly showed it. Inasmuch as these opinions were founded on probabilities, it was proper that they should give to the jury, as a matter of scientific knowledge, their reasons for these opinions. The hypo-

thetical questions, except for an error which was afterwards corrected in one part of the hypothesis, were correct in form and substance.*

In making its defence, this defendant called one Hancock, who was a superintendent of construction for the Edison company, and the witness, at the defendant's request, produced and explained certain papers showing the details of materials used in repairs. Some of these papers were signed by one Deery, and the witness said that he was formerly employed by the Edison company, but was then employed elsewhere. In cross-examination the witness testified that Deery left the employ of the Edison company a year before, and was then employed by

---

* These questions were four in number. The first question was as follows: " What would you say as to the probability of electrolytic action upon the pipes, any or all of them, lying at that intersection, prior to March 4th of 1897, assuming that they lay in a position relative to the tracks practically as they there appear, and assuming that the usual traffic of the West End [Street Railway Company] had been carried on over those streets in the various directions for several years, and assuming that, for a period of time, at least, some of the motive power was furnished from the station of the Edison Illuminating Company in Head Place, and assuming that the pipes were from three to six feet below the surface of the street ? "

The second and third questions did not differ materially from the first question, except that the third question asked the witness to " assume that when uncovered the thinner part of the pipe was lying up toward the rail." The fourth question was as follows : " Assuming for a period of several years before March 4, 1897, the six and eight inch gas pipes of the Boston Gas [Light] Company appearing upon this plan had remained in the position in which they appear, and assuming that the West End Street Railway for several years, at least prior to 1890, had conducted their ordinary traffic over this place with cars propelled by a current of electricity; assume that in the mean time, namely, November 1st of 1891, or about that time, there had been a reversal of the polarity of its current used in propelling cars, . . . and assuming that this piece of iron pipe which I have heretofore shown you, . . . on March 4, 1897, was found in the ground with the thinner part toward the top and its appearance practically the same as it is now, assuming these conditions which I have spoken of as to the location of the pipe and influences working on it, in connection with the appearance of that pipe, what would be your opinion as to whether that pipe had been affected by, or been at all disintegrated by, electrolysis ? " Before the question was answered, " 1890 " was changed to " 1897," and " influences working on it " was changed to " conditions surrounding it being as described," and the witness was asked to assume that the pipes were from three to six feet below the surface.

the Boston Gas Light Company. The plaintiff was then permitted, against the defendant's objection, to ask how soon he was employed by the gas light company after he left the Edison company, to which the answer was, "Shortly after." The plaintiff was then allowed to ask whether he was discharged, and whether he was discharged for cause. Each of these questions was answered in the affirmative, subject to the defendant's exception. Deery at that time sat in the court room, being there as a witness at the request of the gas light company. Subsequently he was called by this defendant company and testified.

The judge might well have rejected the testimony objected to when it was offered. It did not bear directly upon the issue, but only tended to show the relations to the parties of one who had signed vouchers, and who might be and who subsequently was called as a witness by one of them. These relations might or might not cause bias on the part of Deery. If they had been offered in testimony in the cross-examination of Deery, it clearly would have been within the discretion of the presiding judge to admit them in connection with Deery's appearance and manner, for the purpose of testing his credibility and ascertaining whether or not he was free from prejudice in giving his testimony. Although the fact that one has been discharged "for cause" from the service of another against whom he testifies would not ordinarily be an independent ground of impeachment of a witness, the introduction in evidence of such a fact is not sufficient ground for setting aside a verdict, unless it appears that it was probably prejudicial to the objecting party in its effect upon the verdict. In this case the most that can be said in support of this objection is that immaterial evidence was introduced which had no relation to the issue, and which, so far as appears, probably had no effect upon the verdict. It was said at the argument that the trial of this case occupied six weeks in the Superior Court. This peculiarly is a case for the application of the rule that a verdict is not to be set aside for error unless it is made clearly to appear that there was a substantial error which was probably detrimental to the excepting party. The subject of the testimony, namely, the relations of the witness to the parties, as affecting his credibility, is one in regard

to which much properly may be left to the discretion of the presiding judge. It does not clearly appear from the bill of exceptions, and it does not seem to us probable, that the defendant was injured by the admission of this testimony. This exception is overruled.

One Nelson, a clerk of the defendant, was called in its behalf with its book of entries of leaks in its pipes reported to the company, and he gave testimony tending to show that all such leaks in the vicinity of the corner of Tremont and Boylston Streets, reported within three months before the explosion, were promptly repaired. It appeared that he had made from the books of the company a compilation showing all the leaks along the line of the subway reported within five months prior to the explosion. These were one hundred and fifty-six in number. This compilation, which it was agreed might be treated as original evidence, was read to the jury against the defendant's objection, and the jury were permitted to consider the fact that the company had information of these leaks along the line of the subway, in connection with the question whether the company had provided an adequate system for the protection of the public from the unusual danger of escaping gas, incident to the uncovering and relocation of its pipes in the construction of the subway. We are of opinion that these facts, in connection with the other evidence, were proper for the consideration of the jury.

This defendant contended that the gas which caused the explosion was generated in the tubes of the Edison company, and introduced evidence tending to show that a short circuit would be likely to cause such heat in the tubes as to produce gas from the material in the tubes or the junction boxes, and also introduced evidence for the purpose of proving that a short circuit occurred on the line of the Edison company a little before the explosion. A part of this evidence was a dial with marks upon it made by a self-registering instrument, which was intended to show the electrical conditions on the line through the day. There had been erasures and alterations on this dial. The plaintiff called in rebuttal one Pierce, who at the time of the explosion was an assistant in the Head Place station of the Edison company, and at the time of the trial was its superintendent of stations. This witness and other witnesses gave

evidence tending to show that the short circuit was after the explosion and not before it. He testified that he removed the self-registering dial from the clock, and made the report for that day. This report the gas light company had put in evidence, and it contended that the erasures and alterations in it were made for the purpose of showing that the short circuit occurred at a time later than that of the explosion. On cross-examination the witness testified fully with reference to the memoranda made by him on the dial when he took it off, the afternoon after the explosion. He said that " the dynamo clock was fourteen minutes faster than the time indicates by the dial when taken off, and it was four or five minutes slower than the Christian Union clock," which was the clock by which the time of the explosion was fixed by witnesses. He was then asked, " When you undertook to make up this report that afternoon, you were trying to make the time of that mark upon your dial come as late as the time of the actual explosion, were you not?" The form of the question was objected to by the plaintiff, and the question was excluded. The witness was then asked, " Were you not seeking to show that that dial, if corrected, would show that the first mark was as late as to the time of the explosion?" This was also excluded upon the plaintiff's objection to its form, and exceptions were taken. The correction and memoranda referred to were in reference to the time shown by the dial. The questions were evidently intended to direct the attention of the jury to the relations of this witness to his employer, and the circumstances which, in the light of subsequent events, might seem to make it best for the employer to falsify in regard to the time of the short circuit, if it occurred before the explosion. All the material facts had been fully stated by the witness in cross-examination. There is no statement in the bill of exceptions that the defendant expected to elicit any valuable testimony by the questions. It has often been said that the refusal to permit a question to a witness is not a sufficient reason for setting aside a verdict, unless there is something to show that valuable testimony was thereby probably lost by the excepting party. *Commonwealth* v. *Smith,* 163 Mass. 411, 429, and cases cited. If each of these questions had been answered in the negative, the defendant certainly could have derived no benefit from the

answer. If each of them had been answered in the affirmative in the sense that the witness knew that the time of the mark was later than the time of the explosion, and that he tried by corrections and memoranda to make the dial show the truth, the defendant could have derived no benefit from the answer. If it was the purpose of the defendant to show by the questions and answers that the witness had intentionally made a false entry upon the dial, and had sworn falsely in regard to it, there is no reason to suppose that the witness would have given an answer in support of that theory. So far as appears the defendant, by the suggestion contained in his questions, — a suggestion which would have come quite as properly in argument, — obtained all the advantage that he could have obtained from an answer to the questions. Although the judge in his discretion properly might have permitted the questions to be asked, his refusal was not an error which would justify this court in setting aside the verdict. It is also to be noticed that Downing, who had charge of the Head Place station on that day, and whose duty it was to make the report, was cross-examined at length as to how these erasures came to be made, and that other witnesses who were there and who heard the explosion testified to their observation of the electrical conditions in their office at that time and immediately afterward.

There were other exceptions to the admission and exclusion of evidence which have not been argued, and which we understand to have been waived. There were also still others which we deem it unnecessary to discuss.

The judge rightly ruled that the defendant had no right to argue that the erasures and alterations in the dial and report above referred to were "evidence of an admission by the company that the disturbances in the Edison system before the explosion were the cause of or contributed to the explosion, or at all events preceded the explosion." There is some ground for the contention that the persons who made the erasures and changes were not agents of the company to make an admission of the kind referred to, and that therefore their admissions could not affect the corporation. *Gilmore* v. *Mittineague Paper Co.* 169 Mass. 471. *Creed* v. *Creed*, 161 Mass. 107. Moreover, the Edison company was not at that time a party to the suit, for a

verdict had previously been rendered in its favor; but if it had continued to be a party to the suit, its admission would not have been competent against the plaintiff in the consideration of his claim against the Boston Gas Light Company, resting on independent grounds. There is nothing to indicate that the defendant's counsel was limited in his argument as to the effect of these alterations and erasures in determining the value of the dial as evidence, or in determining the credibility of the witnesses. Because the admission of one defendant is not evidence against a plaintiff pursuing another defendant on independent grounds the exception is overruled.

The refusal to rule that there was no evidence that the pipes had been affected by electrolysis was correct. The testimony of the electrical experts Bell and Farnum, in connection with the facts proved by other witnesses, furnished such evidence.

The judge could not properly give the instruction requested that the ignition of the gas was the proximate cause of the accident, and that because the ignition was not made by the defendant gas company but by some person for whose acts it was not responsible it could not be held liable. If this defendant negligently suffered its gas to accumulate and remain in the chamber, it is liable for the natural and probable consequences of its negligence. If the ignition of the gas by a natural cause, or by some person, ought to have been foreseen as a probability, the defendant is liable, even if such person might also be chargeable with negligence. *Lane* v. *Atlantic Works,* 111 Mass. 136. *McCauley* v. *Norcross,* 155 Mass. 584, 586.

As we have already said, it was a question of fact for the jury, in view of all the circumstances of the case, to determine whether reasonable care for the safety of the public required this defendant to provide an inspector for its pipes within the line of the subway work, and the request of the defendant for a ruling that it was not its duty so to do was rightly refused.

The judge was right in modifying the defendant's request that in order to charge it the jury must find that the gas which exploded was its gas, so that they might hold it liable if the gas which caused the explosion was in whole or in part its gas. The part referred to in the modified instruction must be taken

to mean a substantial part, such that it was a cause of the explosion, and not merely an insignificant part.

In reference to the liability of the Metropolitan Construction Company for the work of construction, the plaintiff agreed that the jury might be instructed that " there is no evidence in this case from which the jury is authorized to infer, as against the Metropolitan Construction Company, that the spark or fire which caused the explosion came from above the bridge forming the temporary roof of the cavity at the corner of Boylston and Tremont Streets, or through any interstices in the bridge." At the conclusion of the charge the defendant gas light company asked the court to rule that it was entitled to the benefit of this instruction. We are of opinion that the instruction as an abstract proposition was incorrect. It was given only with the plaintiff's consent, in reference to the particular liability of one of the defendants. There was evidence that an electric car was running over the bridge, and it is a matter of common knowledge that sparks are given off from the rails under such cars very frequently, and the jury might well find that one of these sparks ignited the gas coming up through the interstices of the bridge. If the rulings were correct upon the issue between the plaintiff and this defendant, the latter has no ground of exception because a too favorable instruction given upon a different claim against another defendant was not also given in its favor. If it were open to this defendant to except on the ground that a too favorable ruling was made for another defendant, which we do not intimate, it did not attempt so to except. This exception must be overruled.

*Exceptions overruled.*