## FORT WORTH GAS CO. v. COOPER.
### (No. 2535.)

(Court of Civil Appeals of Texas. Texarkana. April 28, 1922. Rehearing Denied May 11, 1922.)

1. **Gas** &#8667;20(2)—**Evidence held to sustain finding that flame from stove burner lighted by injured party ignited gas escaping from meter in nearby closet.**

In an action for injuries from an explosion of gas from a leaking meter in a kitchen closet near a cookstove, evidence *held* sufficient from which to infer that the flame from a stove burner which plaintiff lighted ignited the gas.

2. **Negligence** &#8667;62(1)—**Original negligence may be proximate cause of injury regardless of intervening agency.**

The original negligence may legally be regarded as the proximate cause of the injury, regardless of an intervening agency, if the injury ought under the circumstances to have been foreseen.

3. **Negligence** &#8667;59—**Particular injuries and precise manner of inflicting need not have been foreseen.**

To make a negligent act the proximate cause of an injury, it is not essential that the particular injuries and the precise manner of their infliction could have been reasonably foreseen; it being sufficient that some like injury produced by similar intervening agencies should have been foreseen.

4. **Evidence** &#8667;8—**Gas** &#8667;18—**Effect of gas explosion a matter of common knowledge; company's negligence in allowing escaping gas to accumulate held proximate cause of injury from ignition thereof.**

A gas company which negligently suffered gas escaping from a meter to accumulate in a kitchen closet located within three feet of a cookstove cannot avoid liability for injuries from an explosion because the gas was ignited by fire from a stove burner lighted by plaintiff in the usual and ordinary way, which the company could readily have foreseen would naturally cause ignition of the gas, the combustion or explosion of which, in sufficient quan-

tity, it is a matter of common knowledge, might result in bodily injury to one so near.

**5. Gas ⬯20(4)—Contributory negligence in lighting stove near gas-filled closet held for jury.**

Whether a housewife familiar with the smell, inflammability, and explosive nature of gas, which she used daily in cooking, was guilty of negligence proximately causing or contributing to her injury from an explosion in lighting her cookstove about three feet from a closet in which, to her knowledge, gas from a leaking meter was accumulating, without first opening the closet and kitchen doors, though the house had been closed all day during her absence, and she smelled gas in the kitchen on returning, *held* for the jury; the evidence not showing conclusively that she was cognizant of the extent of the leakage and the danger when she lighted the stove.

**6. Negligence ⬯122(2)—Contributory negligence must be proved by defendant, though question is raised by plaintiff's testimony.**

Where plaintiff's evidence makes a prima facie case of negligence proximately causing injury and merely raises a question of contributory negligence to be solved by the jury, the burden of proving such defense is on the defendant.

**7. Damages ⬯208(1)—Amount of damages is for jury, where evidence is conflicting.**

Where the evidence is conflicting as to the nature and extent of plaintiff's injuries, the amount of damages is purely a question of fact for the jury.

Appeal from District Court, Tarrant County; Ben M. Terrell, Judge.

Action by Mattie L. Cooper against the Forth Worth Gas Company. Judgment for plaintiff, and defendant appeals. Affirmed.

The action is by appellee to recover damages for personal injuries caused by an explosion of gas which had accumulated in a closet in her kitchen. It was alleged in the petition that the discharge of the gas was due to a defective condition of the meter or its connections, known to, and negligently suffered to exist by, appellant. The appellant answered by general denial, and specially pleaded that the appellee was guilty of negligence proximately causing her injury.

The appellant installed a gas meter in the dwelling house in evidence prior to the time the appellee moved into it as an occupant or tenant of the owner. The meter was located in a closet in the kitchen, in a corner thereof. The closet is about 2½ feet wide, extending to the ceiling. The kitchen is a room 13 by 14 feet. The cooking stove was about 3 feet distant from the closet. It was the duty of the appellant to install, inspect, and keep in safe repair the meter. On the morning of the day of the explosion the appellee shut her house and remained away on business matters until about 7 o'clock p. m. Upon her return home she went into the kitchen to make a cup of coffee. According to her evidence, she struck a match and lighted one of the burners of the gas cooking stove, then walked to the sink on the opposite side of the room and about 10 feet distant from the stove, and drew from the water pipe a dipper of water to put in the coffeepot, and then started back to the stove. Quoting her statement:

"I turned around with the dipper to go to the stove to put the water in my coffeepot, and when I got pretty close [about 2 feet] to the stove the gas exploded, and it just came into my face, and I didn't know anything more. The explosion came from the meter; the pipe bursted out; there was so much gas in that closet; it had accumulated there in it. The closet door was closed and the gas bursted it open. I do not know how loud the explosion was, but it sounded like a cannon to me. It came right into my face. I had not gotten quite to the closet door when it flew open and the gas came out. The explosion knocked me unconscious."

On cross-examination appellee testified:

"I had been away from the house nearly all day. I do not remember whether it [the meter] was leaking on that particular morning or not. The house was closed up that day, and when I came home the house was full. You could not take the leak out through the stove. Of course, I did not know it leaked that much in there, and I did not know anything about that. I knew it was leaking, but I did not know it was all full of gas. The stove had been lit just a very short time before the explosion. I had no cause to go to the closet, and did not open it at that time. The coffeepot was not in the closet, and I had no occasion to go to the closet to get any vessels out of the closet on that particular occasion. I did not strike any matches inside the closet, but I did strike matches for the purpose of lighting the stove."

No other witness but appellee saw or knew of the exact cause of the explosion. Appellee is a woman 64 years old, and had, as shown, been accustomed to use gas as a fuel for about 11 years, was familiar with its smell, could detect its presence, and was acquainted with its inflammable and explosive character. Appellee made frequent complaints to appellant about a leakage of gas in the meter connections, and made many efforts to have appellant remedy the leakage, insistently claiming that there was a discharge of gas. These complaints covered a period of about 3 months. The appellant had its inspector visit the place, with instructions to make necessary repairs. He testified that he did safely repair the meter and left it in good condition. Whether or not the leakage, if any, was stopped and the meter, and its connections were put in safe repair before the injury in suit rests en-

tirely upon conflicting evidence. The evidence went to show a defective condition of the meter connections, and that this defective condition continued until finally it resulted in such a discharge of gas as to cause the injury in suit. It appears that just after the explosion the city fire department came and extinguished the flames. It further appears that the fire burned through the closet wall, and the paper on the walls of the kitchen was burned to the ceiling. It also appears that "the glass was broken out on the meter." It was proven that "any kind of a leak where the gas is confined would be liable to cause an explosion, if fire were about. Of course, it would have to come in contact with a spark or flame, and there would have to be a sufficient amount of gas confined."

The testimony is conflicting as to the nature and extent of the appellee's injuries. According to her own evidence appellee suffered serious injury, to the extent of constant disability. The jury made the findings of fact, on special issues submitted, that the explosion was caused by reason of gas escaping or leaking from the appellant's gas meter, or its immediate connections with the gas pipes, located in the closet of the kitchen, and that the escape of the gas was proximately caused by the negligence of the appellant in failing to repair the meter or its immediate connections, and that the appellee suffered injuries as a result of the explosion, in damages in the sum of $3,000. The jury further found as a fact that the appellee was not guilty of contributory negligence in igniting the gas on the cooking stove just prior to the explosion. There is evidence to warrant the findings of the jury.

H. T. Cooper, Slay, Simon & Smith, and Lockett & Crowley, all of Fort Worth, for appellant.

R. L. Carlock and R. L. Carlock, Jr., both of Fort Worth, for appellee.

LEVY, J. (after stating the facts as above). Appellant's first proposition is that, even if it be conceded that its failure to remedy and prevent the discharge of the gas from the meter or its immediate connections was negligence still such negligence was not, as a matter of law, the proximate cause of the explosion and injury resulting therefrom. It is insisted that the ignition of the gas was the proximate cause of the injury, and that because the ignition was not made by the appellant or its employees, but by the appellee herself, for whose acts appellant was not responsible, it could not be held liable.

[1] According to the circumstances and physical facts, there was an explosion of gas which had accumulated in the closet located near the cooking stove. It is not definitely shown that the flame or fire from the stove ignited the gas. But the evidence, considered altogether, furnishes a foundation for the reasonable inference that the flame or fire from the stove did ignite the gas.

[2] It could not be said that there was no proximate causal relation between the appellant's negligent act and the appellee's injury. The bare fact or circumstance that the flame or fire from the cooking stove lighted by appellee operated upon the accumulated gas confined in the closet and produced the combustion could not, we think, be held, as a matter of law, in the facts of this case, as relieving appellant of liability for its negligence in suffering its gas to accumulate in the closet. It is not required under the law, in order to determine the efficient or proximate cause of an injury, that in every case every fact or circumstance independent of the original negligence shall be excluded. In certain facts and under certain conditions the alleged negligence may legally be regarded as the proximate cause of the injury, regardless of some intervening agency. The rule is stated in Railway Co. v. Bigham, 90 Tex. 223, 38 S. W. 162, as follows:

"The fact of the intervention of an independent agency * * * bears more directly upon the question whether the injury ought, under all the circumstances, to have been foreseen; and, where this latter fact appears; we think that the original negligent act ought to be deemed actionable."

[3] Neither is it essential, in order to make a negligent act the legal proximate cause of an injury, that the particular injurious consequences and the precise manner of their infliction could have been reasonably foreseen, but some like injury produced by similar intervening agencies. Collins v. Railway Co. (Tex. Com. App.) 212 S. W. 477; Gas Co. v. Hicks, 134 Ky. 12, 119 S. W. 166, 23 L. R. A. (N. S.) 249, 135 Am. St. Rep. 407; Schmeer v. Gaslight Co., 147 N. Y. 529, 42 N. E. 202, 30 L. R. A. 653; Koplan v. Gaslight Co., 177 Mass. 15, 58 N. E. 183.

[4] In this case appellant had information that the meter was in a closet located within 3 feet of a cooking stove, and that the gas was daily or frequently used in the cooking stove by appellee for ordinary and usual cooking purposes. Appellee paid to appellant monthly gas bills. The lighting of the gas, to use the stove in the usual and ordinary way, was required, as appellant must know. In these circumstances appellant could reasonably anticipate, even actually expect, that appellee would frequently and probably daily use the stove in the usual and ordinary way by lighting the gas. Such a course on appellee's part would not, in the facts be unusual and extraordinary to appellant's knowledge. Considering the close proximity of the meter in the closet

to the cooking stove, known to appellant, there could readily have been foreseen as a probability that the lighting of the stove for usual cooking purposes could or would, in a natural course, cause ignition of gas accumulated in the closet. It could not escape the common knowledge that the combustion or explosion of gas, if in sufficient quantity, might and could result in bodily injury to a person, as appellee would be in cooking, near enough to it to be hurt.

[5] Appellant seems to argue especially that it could not foresee that appellee, knowing of the presence of gas accumulated in the closet, would yet light her stove and cause an explosion. This contention, as applied to the facts, rather bears upon and relates to the question of contributory negligence. In view of all the evidence, it is believed that the question of proximate cause was one to be determined, as it was, by the jury; and the assignments are overruled.

Appellant's further proposition is that the appellee was guilty of contributory negligence as a matter of law in igniting the gas on the stove, thus causing the explosion which resulted in her injury. As contended, by appellant, the appellee testified that she was 64 years old and had been using gas as a fuel, with daily experience in cooking, could recognize its presence by the odor or smell, and was familiar with its inflammable and explosive nature; that she had known for many days of the escape of gas and that the discharge would be confined in the house when the house was closed; that the house had been fastened and closed all day, during her absence on the day in suit, and that upon her return home she smelled gas in the kitchen; that she lighted her gas cooking stove without first opening the closet and kitchen doors to let such accumulated gas escape outside. It further appears that appellee first stated:

"The house was closed up that day, and when I came home the house was full."

Then, she explains:

"Of course, I did not know it leaked that much in there, and I did not know anything about that; I knew it was leaking, but I did not know it was full of gas."

It is believed that, in view of all the circumstances, it was a question of fact for the jury to decide whether or not the appellee was guilty of negligence proximately causing or proximately contributing to cause her injury. It does not conclusively appear, reasonably construing the evidence, that appellee situated as she was, had notice or knew on the occasion in question that the gas in the closet had collected in a dangerous quantity, so that she, acting in reasonable care, could realize and appreciate the extent of her danger if she lighted the stove. And it does not conclusively appear that the appellee was cognizant of the extent of the leakage and the danger at the time when she lighted the stove. She does say that "the house was full" of gas, but, in view of her explanation, she evidently did not mean to say more than that she noticed a strong smell of gas in the kitchen. If the kitchen had been "full" of gas an immediate combustion would have resulted, as a physical fact, from igniting the gas on the stove. As a fact, it appears, the explosion was not coincident or simultaneous with the striking of the match, but occurred some minutes later. The explosion was from the closet in which the meter was located. Wherefore, under the evidence, the court cannot, as a matter of law, we believe, impute to appellee knowledge that an explosion would naturally and probably follow her act of lighting the stove. The assignments are therefore overruled.

[6] The appellant requested and the court refused to give a charge in substance specially instructing the jury that the burden of proof was upon the plaintiff to show by a preponderance of the evidence that she was not guilty of contributory negligence. The proposition is that, the plaintiff's own testimony having raised the question of contributory negligence, the burden of proof of that issue was on her. The doctrine sought to be applied has not, we think, application to the facts of this case. The defense of contributory negligence was interposed by appellant; and under the plea, as well as the evidence here, the burden of proof was upon the appellant. The evidence adduced by the appellee made a prima facie case of negligence on appellant's part proximately causing injury to her. The facts shown by her did not, as a whole, leave the cause of the injury unexplained, or so in doubt as to require appellee to exculpate herself from the charge of contributory negligence. Some evidence brought out on cross-examination had the legal effect merely to raise a question of her negligence to be solved by the opinion of the jury. It is said in Railway Co. v. Anglin, 99 Tex. 349, 89 S. W. 966, 2 L. R. A. (N. S.) 386:

"It is * * * insisted that the evidence of the plaintiff and of his own witnesses exposed him to a suspicion of contributory negligence, and that therefore the burden was upon him to show that he was not guilty of such negligence. That rule was at one time recognized by this court as the law of this state; but it is now definitely settled that in every case in which the plaintiff seeks to recover of defendant on the ground of negligence of the defendant and the defendant relies on the defense of contributory negligence, in order to maintain that defense, it must appear by a preponderance of the evidence that the plaintiff was guilty of such negligence."

Further, in Railway Co. v. Harris, 103 Tex. 422, 128 S. W. 897, it is said, as to burden of proof concerning contributory negligence:

"But if the evidence is such as to require the submission of that question to the jury at all, the fact that some of it or all of it may come from plaintiff does not alter the rule as to the burden of proof; it is still incumbent on the party who makes the charge to maintain it throughout by making the evidence preponderate in his favor."

See, also, Railway Co. v. Penningto (Tex. Civ. App.) 166 S. W. 464.

[7] The appellant insists that the amount of damages awarded is excessive. The evidence is conflicting as to the nature and extent of the appellee's injuries. According to her evidence she suffered and is suffering from grievous injury received to the extent of constant disability. According to the medical testimony, she did not suffer all the bodily injury she testifies to. If her testimony be true, then the sum of money awarded as compensation is not excessive. The question was one purely of fact for the jury to decide, as in their province to do.

The judgment is affirmed.