**PHŒNIX ASSUR. CO., LIMITED, OF LONDON v. TEXAS CITIES GAS CO.**

No. 3455.

Court of Civil Appeals of Texas. El Paso.

Dec. 17, 1936.

Harrison, Scott & Rasberry, of El Paso, for appellant.

Jones, Hardie, Grambling & Howell, of El Paso, for appellee.

HIGGINS, Justice.

On January 19, 1935, an explosion of gas occurred in the basement of a residence in the city of El Paso owned by A. R. Jensen. The explosion damaged the house and heating furnace. Jensen carried an explosion insurance policy issued by Phœnix Assurance Company, Ltd., of London. Said company paid Jensen the damages inflicted by the explosion. Jensen assigned to the insurance company his claim against the Texas Cities Gas Company for damages. The insurance company later brought this suit against the gas company to recover such damages. At the conclusion of the plaintiff's evidence the defendant moved for an instructed verdict which was granted.

The gas company is a public utility supplying natural gas in El Paso. In October, 1930, Jensen purchased from the gas company a gas furnace which the company installed in the basement of the house. This furnace furnished hot air which was distributed through the house by pipes. The furnace was equipped with two pilot light burners. It was controlled by a thermostat which operated automatically. That is, when the temperature in the house dropped to a certain degree the gas was automatically supplied to the furnace and ignited by the pilot lights. When the temperature rose to a certain degree the supply of gas to the furnace

ceased. The pilot lights were supposed to burn constantly.

In support of the peremptory charge appellee says:

1. It owed no duty to inspect or repair the furnace.

2. The evidence is insufficient to show it failed to exercise ordinary care to repair the pilot light described in the petition.

3. The evidence is insufficient to show appellee knew, or in the exercise of ordinary care should have known, the furnace was so defective as to be dangerous.

The residence was occupied by Wm. C. Steffey and wife as tenants of the owner.

Appellant in its brief has correctly summarized the evidence bearing upon the question at issue.

With minor changes it is adopted as follows:

Appellee serviced the furnace. In October, 1934, upon request of Steffey, appellee's agent called and started the furnace in operation. Shortly thereafter trouble developed. Appellee's agents and servants came in response to a request from the tenants and inspected the furnace. The furnace was equipped with two pilot lights which, when in proper adjustment, burned at all times. An automatic thermostat regulated the heat by turning on and off the gas. Some time after the first inspection Mr. Steffey, the tenant, noticed one of the pilot lights was not burning. Appellee, at the request of the tenant, sent its agents and servants to inspect and repair. They worked upon the furnace and stated to Mr. Steffey the pilot light was defective. In response to his inquiry, Mr. Steffey was informed the furnace was safe for operation. About January 10, 1935, further trouble developed. Appellee's agents and servants called, worked on the furnace for about "two hours," told Mrs. Steffey the pilot light was defective; that it might last through the winter, but a new one would have to be installed for the next winter. On January 19, 1935, the explosion occurred. Shortly after the explosion an official of appellee, while inspecting the wreckage, picked up the pilot light and said, "Here is the trouble." Subsequent to the explosion two ladies rooming in the house and present when the explosion occurred asserted claims for damages against appellee on account of the explosion. These claims were settled by appellee.

The employees of appellee were the only ones who attempted to repair or inspect the furnace. The amount of damages to the building was proven.

Mr. Steffey testified:

"It did not give satisfaction when I got my first bill, I am not sure, but I think it was somewhere about $18.00 or $19.00, and I said 'I don't see how we are going to stand this much gas bill, there must be something wrong with the furnace', and it was not giving satisfaction; after that I noticed that one of the pilots would go out. There were two pilots, a pilot under each burner, two big burners, and then it would come on again, evidently when it would light one burner it would go across and light the other burner, and I noticed the pilots were not working, and it was not giving satisfaction.

"Q. In these conversations you had with the employees of the gas company did they give you any reason why the pilot lights would go out? A. No, they did not tell me anything.

"Q. Did you have any conversation with them in reference to the pilot lights going out? A. I did.

"Q. What was the substance of that conversation? A. My recollection is that this man stated that he thought that one of the pilots, there was something defective, but that it would last the winter out."

Mrs. Steffey testified:

"Q. Did you see the employees at that time? A. Yes, I saw him, after he worked on the furnace he went on down in the basement, then he came back through the kitchen, and I asked him then what the trouble was with the furnace, as we had called them several different times, and he said it was about a pilot, so I said, 'Well, do you think its safe then for us to go ahead and use this furnace, or we would put up our stoves and use them?' and he said, 'Well, I think it will go through this winter,' that is what the gas man told me.

"Q. Did he say anything about whether you would have to do anything next winter or not? A. Yes, he said there would have to be a new pilot next winter if we burned the furnace the next winter."

Again Mrs. Steffey testified: "This man did not say anything to me, I never talked to any but one, and that was the time he

**158**

came through the kitchen and I asked him what was the trouble, why the furnace would go on and off and the fire would go out, and I wanted to know if it was in good condition, and he told me it was a bad pilot."

An official of the company, shortly after the explosion, came to, the · house, picked up a pilot light, and said, "Here is the trouble." The pilot light was not thereafter found, although Mr. Steffey, the tenant of the property, searched for it.

■ It may be conceded no contractual obligation upon appellee's part to inspect and repair the furnace was shown. But it was shown appellee was requested so to do and undertook to inspect the furnace. Having undertaken to do so, it was the duty of appellee to exercise ordinary care in making such inspection and to make any necessary repairs or advise the tenants or owner of the defects and afford an opportunity for them to make such repairs. 28 C.J., Gas, § 59.

It is a reasonable deduction from the evidence that one of the pilot lights was defective and ceased to burn; that gas escaping from this light accumulated in the furnace and basement which was later ignited. The evidence affirmatively shows the inspecting employees of appellee discovered one of the pilot lights was defective but thought it would last through the winter. In other words, a chance was taken upon the pilot light lasting through the winter.

■ It is a matter of common knowledge, of which the courts will take judicial notice, that natural gas is an explosive, inflammable substance, and highly dangerous. 23 C.J., Evidence, § 1966; Jamieson v. Indiana Nat. Gas Co., 128 Ind. 555, 28 N.E. 76, 12 L.R.A. 652; Port T. Ry. Co. v. Brimer (Tex.Civ.App.) 19 S.W.(2d) 111.

Such being its nature, "one who uses it for profit is bound to exercise care corresponding to the dangers incident to its use." San Antonio G. & E. Co. v. Ocon, 105 Tex. 139, 146 S.W. 162, 39 L.R.A.(N.S.) 1046; Olivas v. El Paso E. Co. (Tex.Civ.App.) 54 S.W.(2d) 154, and cases there cited.

■ Under all the facts reflected by the record and the inferences reasonably deducible therefrom, issues of actionable negligence upon appellee's part were raised in failing to make a proper in-spection when it undertook to do so, and in failing to replace or properly repair the pilot light found to be defective, or warning the tenant or owner of the defective pilot light and danger incident to the continued use of the same so as to afford the tenant or owner the opportunity of having such light repaired or replaced. San Antonio Public Service Co. v. Schoff (Tex.Civ.App.) 296 S.W. 619; Ft. Worth Gas Co. v. Cooper (Tex.Civ. App.) 241 S.W. 282; House v. Wichita Gas Co., 137 Kan. 332, 20 P.(2d) 479; Hilson v. Pacific G. & E. Co., 131 Cal. App. 427, 21 P.(2d) 662.

Reversed and remanded.