# PRUDENTIAL FIRE INSURANCE COMPANY v. UNITED GAS CORPORATION.

No. A-806.  Decided November 13, 1946.
(199 S. W., 2d Series, 767.)

258

*R. R. Donaghey,* of *Vernon,* and *W. T. Perkins,* of Quanah, for petitioner.

The Court of Civil Appeals erred in holding that the trial court committed error in not granting the gas company's motion for an instructed verdict. O'Neil v. O'Neil, 258 S. W. 588.

*Bert King,* of Wichita Falls, and *O. L. Bell,* of Quanah, for respondents.

MR. JUSTICE TAYLOR delivered the opinion of the Court.

This is a suit filed by Prudential Fire Insurance Company as assignee of a damage claim of the owner of a building insured against gas explosion. The defendant is United Gas Corpporation. The trial court judgment, predicated on jury findings, was in favor of the gas company. The Court of Civil Appeals affirmed the judgment on the ground that the trial court could have instructed a verdict for the gas company instead of submitting the cause on special issues. 191 S. W. (2d) 517.

The building in which the explosion occurred (January 18, 1944) is a business building in Quanah, Texas, owned by Mrs. Z. R. Henderson. On February 2nd, some fifteen days after the explosion, the insurance company, petitioner here, paid Mrs. Henderson the sum of $1,275.00, which it alleged it was legally liable for under its policy issued to her covering loss caused by gas explosion. The company, in addition to paying Mrs. Henderson in settlement of her claim against it the sum of $1,275.00, took over on February 2, 1944, by assignment from her under the subrogation clause of the policy, whatever causes of action, including claims for damage or negligence, she might have, to the amount stated, against any person connected with the property described in the policy.

At the time of the alleged loss the Henderson building was

occupied by the Richardson store as a tenant of Mrs. Henderson. The gas company was furnishing gas for the tenant, as it was also for an adjoining Piggly Wiggly store.

The alleged cause of the explosion, stated within the insurance company's allegations and the evidence, was a leak in an outside gas service line installed by the gas company in 1926 underground. The service line took off from the main line in an alley west of the Henderson and Piggly Wiggly buildings, the latter being fifteen feet shorter on the west than the Henderson which it adjoined on the south. The two buildings run east and west and front on Main Street which runs north and south. The alley west of the buildings also runs north and south. The Henderson building extends practically to the alley while the Piggly Wiggly extends to within twelve or fifteen feet of the alley. The space (about 12 by 25 feet) back of Piggly Wiggly was the loading zone of the Piggly Wiggly store. There was a concrete apron adjoining the back of Piggly Wiggly a few feet wide which extended across the rear. The installation of the Piggly Wiggly service line was from the gas main in the alley to a point near the west end of Piggly Wiggly, and ran underground through the loading zone along the Henderson's south wall. At a point inside the wall several feet east of the southwest corner of the Henderson building, a tee was placed in the Piggly Wiggly service line. A pipe or riser was screwed into the tee and came up vertically out of the ground close to the Henderson building's south wall. A meter was installed on the riser to measure the Piggly Wiggly gas.

It is the insurance company's contention that the evidence showed a leak developed in the line where the riser was screwed in; that the escaping gas seeped through the wall, and its cracks and crevices, and accumulated in a pocket under the ceiling of a rear balcony; and that *after the explosion* and after an excavation had been made against the south wall on the outside at the riser, it was disclosed that the source of the leak was at the point where the riser and tee joined.

The insurance company alleged generally in its second amended petition that the gas company, being engaged in the business of distributing a highly explosive and dangerous article of merchandise known as natural gas, was negligent. Negligence was alleged on the part of the company in installing and maintaining the Piggly Wiggly line underground too near the Henderson building and in not making adequate inspections, in that

it failed to use that degree of care in its business of gas distribution commensurate with the danger incident to the placing and use of the line in such close proximity to the Henderson building wall.

The gas company, in addition to denying in its second amended answer the insurance company's allegations, alleged affirmatively that it *placed* and installed the Piggly Wiggly line according to the best customs and uses, had no notice that gas was leaking prior to the explosion; that Mrs. Henderson had notice of free gas in the building in time to have notified the company thereof and negligently failed to do so; that the line was inspected at intervals, and if in a leaky condition (which it denied), was so because of the acts of some third person.

The insurance company by a supplementary pleading which it named its first supplemental petition, denied the allegations and further pleaded that if the leak was caused by the acts of a third person, it was because the gas company negligently failed to provide a safeguard for the Piggly Wiggly line to protect it from the acts of such third person, in that it knew or should have known in placing same where it was (with the riser unprotected) the line would be exposed to the acts of third person.

Upon conclusion of the testimony the gas company filed a motion for a peremptory instruction upon the grounds largely that there was no evidence that the Piggly Wiggly line leaked *prior to the explosion,* and none that the gas leaked through the Henderson building wall and into the building; and that the evidence conclusively showed that some person backed into the riser with great force and broke it *after the explosion;* that it conclusively appeared that there was no negligence in the place of installation of the line or in the matter of the material used; that the proof undisputedly showed that the occupant of the Henderson building (not Mrs. Henderson herself) knew that free gas was in the building *prior to the explosion* and deliberately set the gas on fire; and that it was conclusively established that the gas in the Henderson building could have come from nowhere except its house lines.

The trial court overruled the motion and submitted the case on special issues, the first and second of which were so framed as to inquire whether, prior to the explosion, gas escaped from the Piggly Wiggly line and entered into the Henderson building;

and whether, in such event, its entry and accumulation in the building from this source caused the explosion.

The remaining special issues were so framed as to inquire whether the gas company was negligent in installing and using the Piggly Wiggly line in such close proximity to the Henderson building; in the matter of making proper inspection of the line, and in the matter of making discovery of the break and whether, if negligent in any of the particulars inquired about, such negligent acts, or any one of them, proximately caused the explosion. The special issues were all answered in favor of the gas company.

The insurance company filed a motion for judgment non obstante veredicto for $1,224.13, the stipulated amount (with interest) the insurance company would be entitled to recover, if any. The grounds of the motion were that there was no evidence to support the answers to the first and second special issues to the effect that gas did not escape from the Piggly Wiggly line and enter the Henderson building and cause the explosion; and for the further reason that the evidence was uncontradicted and overwhelming that the gas entered the building through the cracks and crevices in its wall and caused the explosion. The trial court overruled the motion and rendered judgment for the gas company on the jury's verdict. The Court of Civil Appeals affirmed the judgment of the trial court under the view, not that he correctly entered judgment on the jury's finding, but on the ground he erroneously failed to instruct a verdict for the gas company.

■ Writ of error was granted on the insurance company's point alleging that this holding was erroneous. We adhere upon final consideration to the opinion entertained in granting the writ. There was evidence warranting the trial court's submission of the issues inquiring whether gas escaped from the Piggly Wiggly line and entered the Henderson building and caused the explosion. It tended to show that the wall along which the line was installed and maintained, was not impervious to being penetrated by natural gas; that the walls, which were old, were double and built of stones to a depth of about three feet under ground; that the foundation was wide and constructed of the same material; that the double walls were constructed with a space between filled with "chippings off the big stones, and mortar"; and that they were of the same material above and below the surface. Mr. Harwell, one of the gas company's witnesses,

who testified when first on the stand that the rocks in the walls appeared to be intact above the ground, was asked to look again to ascertain whether there were any holes or cracks on the outside leading into the space between the double walls. Testifying after inspection he said he found four cracks "about like lead pencils where you could stick a wire in," and that after finding these he went no further. There was evidence that employees of the Richardson store had smelled gas in the building at intervals prior to the explosion, and that some continued to smell it after the explosion. It is undisputed that a pocket of gas had accumulated in the building at the time of the explosion, under the ceiling of a balcony at the rear; also that the explosion was touched off, there. The opinion of the Court of Civil Appeals notes the fact that immediately after the explosion the gas company cut off the gas from the Henderson building and began a search for leaks at the rear of the Piggly Wiggly store; that the search continued that day and the next without success; but that about 11 o'clock on the night of the last day's search Mr. Richardson, Mrs. Richardson and Mr. Truelove, discovered the odor of gas coming through a crack on the inside of the Henderson building south wall four or five feet above the floor just west of the point of juncture of the rear wall of Piggly Wiggly and the south wall of the Henderson; that the gas company was notified the next morning and in a short time its employees excavated outside by the side of the wall at the riser and found the leaking pipe. Mr. Henderson, testifying concerning the discovery, said: "So I went to the back of the building and found that there was a little crack (in the south wall) * * * and a hole the shape of an egg and about twice as big; there was quite a bit of pressure coming out at this hole and I stuck my nose to it and there wasn't any question in my mind as to what it was. * * * It was gas." He said when he showed the gas company men where the gas was coming in they went outside and proceeded to excavate as above stated; that when they had dug down 12 or 15 inches almost to the pipe the escaping gas blew the dirt back; that after the broken pipe was replaced there was no further odor inside or leakage into the building; that he could not detect any gas smell on the outside of the building before the excavation and it was only after the excavation that he could smell it outside.

The difference between the contentions of the insurance company and the gas company as to the source of the free gas in the building, concerns largely where the leaking pipe which was feeding gas into the gas pocket, was located; that is, whether

it was the Piggly Wiggly line on the outside or the house line of the Henderson building under the floor. The gas company, stating its theory of how "this explosion happened," said in part:

"The house lines were leaking. * * * Jacobs went hunting for the leaks in his house line with a lighted match. * * *; that there were three lighted stoves in the store * * *; that Jacobs reached up, practically as high as he could reach, along the pipe passing over a partition wall and the explosion occurred. * * *, and we believe reasonable minds cannot reach any other conclusion that the gas that caused this explosion was coming from the house lines under the floor and had a stream of gas going up to the ceiling, and this stream * * * constituted a fuse from the floor to the ceiling. * * * the gas under the floor and the gas against the ceiling exploded simultaneously."

The testimony was not conclusive that escaping gas collected in the building as alleged. Both lines belonged to the company. It was conclusive that a leak was discovered in the Piggly Wiggly line *after the explosion,* and is not disputed that the gas was cut off from the Henderson building line by the gas company immediately thereafter. Nor is it conclusive that the continuance of the smell of *gas in the building* after the explosion, did not lead to the discovery of the leak in the Piggly Wiggly line as pointed out above.

The gas company contended that a verdict should have been instructed in its favor because there was no evidence that the underground Piggly Wiggly line was leaking gas that prior to the explosion seeped through the wall of the Henderson building, or that it seeped through at any time. It contended that the proof was positive that the gas which accumulated against the ceiling escaped from the Henderson building line under the floor and that some third person broke the line. The Court of Civil Appeals appears to have sustained this contention and to have adopted the gas company's contention of non-liability as a matter of law. It appears from the opinion that the court indulged an inference that the underground pipe was boken as the result of contact of the riser with a truck bumper *after the explosion occurred.* Without deciding whether the gas company was negligent in failing to safeguard the Piggly Wiggly line, it held there was no proper written pleading by the insurance company alleging negligence in such manner as to authorize submission of this issue.

The court's holding was in error, in view of the supplemental pleading of the insurance company stated above. Panhandle & S. F. Ry. Co. v. Montgomery, 140 S. W. (2d) 241, (application dismissed upon agreed motion, 135 Texas 669), and cases cited on rehearing p. 250. There was no exception by the gas company to the insurance company's supplemental pleading, nor is this a case of the parties joining issue upon the trial of an issue not raised by the pleading. There was no lack of pleadings to raise the question of negligence with respect to the protection of the riser, as well as with respect to the place of installing and maintaining the line. Furthermore, it does not follow, in view of the testimony, that the fact inferred was established as a matter of law or that, if established, there was no testimony tending to show that the leaking gas, prior to the explosion, penetrated the wall of the building and accumulated therein and caused the explosion as alleged and contended for by the insurance company.

The remaining points of alleged error urged on appeal by the insurance company are errors in the charge, jury's misconduct and errors in the admission of certain evidence. The Court of Civil Appeals did not pass upon these because, in its opinion that since the case should not have gone to the jury, the errors, if any, resulting from its submission, were harmless.

■ The errors of law not passed upon below will now be considered. The record reflects that an attorney for the gas company referred in his jury argument to "this Oklahoma corporation coming down here trying to recover off of your local concerns"; that another of its counsel (the presiding judge of the Commissioners' Court and of the Equalization Board of the county in which the case was being tried) referred to an insurance company witness whose duty it was to investigate the subrogation rights of insurance companies, as "hunting out people to sue, trying to make up for what they (insurance companies) have to pay on legitimate claims - - - this fire insurance company from Oklahoma, (plaintiff) you know how they are always running around over the country trying to gouge people out of their money" and to make people "pay through the nose"; that counsel, (upon objection to his argument) after referring the court to testimony showing what he deemed to be "chiseling," and after the court instructed the jury not to consider "that the insurance company" had *"chisled"* somebody, then said to the jury: "You call it what you want to, that becomes your province at this time as quick as the case is turned over to you." In view of another trial we point out, (without regard to whether the

objection urged invoked any relief except that counsel be rebuked) that the arguments were improper.

■ The point alleging jury misconduct was that some of the members of the jury agreed in advance that they would answer, and did answer, the issues submitted in such a way as to effect a judgment in favor of the gas company. It was urged in this connection that such agreement was brought about by the arguments above referred to.

The trial court found that two of the jurors agreed before they voted on any of the special issues that a verdict should be rendered for the gas company and, pursuant thereto, answered each issue so that the verdict they rendered would not permit the insurance company to recover. The court's conclusion of law on the fact found was that this conduct would not "authorize" him to grant a new trial. This was error in that the action of the two jurors constituted misconduct. Having held that the misconduct occurred it became the court's province to determine under all the facts whether injury probably resulted to the insurance company. Rule 327; Barrington v. Duncan, 140 Texas 510, 169 S. W. (2d) 462. The fact is inescapable in view of the entire record, that this was reversible error. When misconduct is established both the trial court and the reviewing courts have the right to review the matter in the light of the entire record. Id.

■ Another point on which the appeal from the insurance company was predicated alleged substantially that the trial court erred in the oral limitation imposed upon its counsel in response to an objection by opposing counsel while he was pointing out in his argument "circumstances" which under his view of the evidence tended to show that care commensurate with that reasonably requisite under the circumstances, had not been shown.

The point was well taken. The charge carried the usual definition of "negligence," stating that the term as used meant that a person (engaged in the business of distributing gas) was negligent who failed to do that which "a person of ordinary care and prudence would have done" under the same or similar circumstances. The instruction given as to the measure of care was correct; but counsel for the insurance company was desirous of urging upon the jury substantially that ordinary care was lacking in that it appeared from such circumstances that care commensurate with the danger involved, had not been used. At

any rate he desired to contend that it so appeared. It was within his province as an attorney to use such argument. It is generally known that natural gas is highly explosive and dangerous. The care that a person engaged in the business of distributing natural gas must exercise to prevent its escape from his pipes, is held to be "that which is commensurate with the dangers incident to the use of such gas." Lane v. Community Natural Gas, 133 Texas 128, 123 S. W. (2d) 639; Texas Cities Gas Co. v. Dickens, 140 Texas 433, 168 S. W. (2d) 208; Lone Star Gas Co. v. Kelly, 140 Texas 15, 165 S. W. (2d) 446, loc. cit. p. 448, 1st par; Phoenix Assur. Co. of London v. Texas Cities Gas Co. (Civ. App.), 100 S. W. (2d) 156; San Antonio Gas & Elec. Co. v. Ocon, 105 Texas 139, 146 S. W. 162; Texas Pub. Service Co. v. Armstrong (wr. ref.), 37 S. W. (2d) 294; Lone Star Gas Co. v. Bradford (Civ. App.), 147 S. W. (2d) 547. While a gas company is not an insurer of safety from injury in its use, the law is settled in this state in accord with the holding above stated and is consistent with the overwhelming weight of authority. In 38 C. J. S., Gas Sec. 42, the text under the heading "Measure of Care Required," states what the measure required to be exercised by a distributor of gas in the following excerpt, deleted so as to eliminate the portions not pertinent here:

"In the operation of its business a gas company is bound to exercise such care and diligence as to avoid injury to the * * * property of others by the escape of gas * * * while it is being carried through its pipes to the consumer. The degree of care required to prevent injury has been variously stated to be ordinary care, due care, due and reasonable care, great care, a high degree of care, and the highest degree of care. The variety of expression means no more, however, than that care and deligence should always vary according to the exigencies which require viligence and attention, conforming in amount and degree to the particular circumstances under which they are to be exerted. * * * *Therefore, in view of the highly dangerous character of gas and its tendency to escape, a gas company must use a degree of care to prevent damage commensurate to the danger which it is its duty to avoid, * * *.*" (Italics ours).

The general rule as stated above, preceding the quoted excerpt, and as italicised in the excerpt, is in harmony with the general rule stated in connection with the annotations of the subject, "Liability of gas company for injury or damage by escaping gas," in 25 A. L. R., p. 262, 29 A. L. R., p. 1250, 90 A. L. R., p. 1082 and 138 A. L. R., p. 870. The general rule is similarly stated in 24 Am. Jur., Gas Companies, Sec. 24. The

trial court, in sustaining the objection to the argument interposed by opposing counsel, said that the argument should be "limited to using the words, 'under the same or similar circumstances'." The trial court erred in imposing the limitation complained of and in not permitting counsel for the insurance company to make use of this general knowledge and to discuss other pertinent circumstances consistent with his theory of the source of the leaking gas and its accumulation in the Henderson building in connection with the cause of the explosion.

There is evidence in the present record raising issues of negligence and proximate cause (1) in the matter of the installation and continued use of the Piggly Wiggly service line alongside the Henderson building, (2) in the matter of safeguarding the riser in question, and (3) in the matter of making proper inspection of the line. We find no evidence that the gas company used inferior materials in installation or maintenance. Nor do we find any evidence of contributory negligence on the part of Mrs. Henderson.

Te judgments of the courts below are reversed and set aside and the cause is remanded for trial in accordance with this opinion.

Opinion delivered November 13, 1946.